**LEWIS CARPET MILLS, INC., Appellant,**

v.

**CARRIAGE PARK, INC., Appellee.**

No. 15456.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

April 17, 1969.

Rehearing Denied May 8, 1969.

Carrington, Johnson & Stephens, James E. Coleman, Jr., Dallas, for appellant.

Robert L. Sharp, Jr., Houston, for appellee.

PEDEN, Justice.

Venue hearing. Lewis Carpet Mills, a Georgia corporation whose principal Texas office is in Dallas County, has perfected this appeal from an order overruling its plea of privilege.

Appellee Carriage Park, a builder and operator of apartment complexes, filed this suit in Harris County alleging the breach of certain express and implied warranties

as to approximately 7,000 yards of carpeting it bought from appellant Lewis Carpet Mills, claiming that the wearing quality of the carpeting was unsatisfactory.

Appellant's first point of error is that the trial court erred in denying appellant's plea of privilege since appellee wholly failed to prove a cause of action against appellant as required by Art. 1995, Vernon's Annotated Texas Civil Statutes.

Under the applicable provisions of Subdivision 27 of Art. 1995, on which Carriage Park's controverting affidavit is based, appellee's burden in this case was that of proving by a preponderance of the evidence that it had a cause of action against appellant, all or a part of which accrued in Harris County.

Neither findings of fact nor conclusions of law were requested or filed. In considering appellant's point, which we deem to be an assertion that the evidence is insufficient as a matter of law to support the trial court's order overruling the plea of privilege, we disregard all adverse evidence, give credit to all evidence that is favorable to the successful party and indulge every reasonable conclusion that is favorable to him. Bank v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953).

Donald Clark, a vice-president of Carriage Park, testified that his company had been pleased with the satisfactory wear of some carpet it had obtained from appellant and used in two other high-rise apartment buildings, so he had a sample taken from a roll of carpet used at one of them and attached it to the order for the carpet in question. In its negotiations with appellant prior to the purchase, Carriage Park dealt with a vice-president of Lewis Carpet, told him it was pleased with the previous order and wanted to duplicate it, even in color and fibre. The carpet with which we are here concerned was delivered to appellee's installer in January, 1967 and he began laying it in February of that year. The project was completed in June, by which

time appellee began getting claims from its managers that the carpet was pilling pretty badly. Pilling is a trade term used to describe a condition which occurs when nylon fibres of a carpet begin to come lose in large quantities making the carpet impossible to clean or maintain and resulting in its having a very thin finish instead of a plush one. Five or six months after installation was begun, appellee began to have to replace the carpet. He had not within a year's use had complaints of pilling of the carpet which had been used in appellee's other apartments and which it had sought to have duplicated in its order of the carpet in question.

Complaint was made to appellant about the pilling, and after several months it sent a Mr. Todd, who came to Houston, visited the project and examined the carpet; Mr. Clark testified that Mr. Todd told him that the pilling was excessive, that Carriage Park "should not be having this trouble at this stage of the life of this carpet and that he felt certain that Lewis would make some effort to work with us and to achieve a solution, * * *."

Mr. Clark testified that the carpet in question did not wear like the carpet from which the sample was taken. He said that the carpet was installed in Harris County, Texas.

When negotiating the sale of the carpet, the vice-president of Lewis Carpet led him to believe it would wear like that in the earlier order but did not actually state that. Complaints about the new carpet have been continuous. The new carpet was not installed by the same people who installed that from which the sample was taken, but the same padding was used under the carpet on all the buildings he has mentioned. As to its cost, the carpeting in question was at the lower end of the scale of what the witness would use in an apartment project. His only experience or training in dealing with carpets was his five years' work in construction supervision, purchase of materials, maintenance and over-all management of large apartment buildings.

The only other witness who testified was Billie Golden, a supervisor of carpet manufacturing for Lewis Carpet Mills, who was called to the stand by the appellant. He said that he had been in the carpet business for seventeen years and was the one who set up the machine in the mill to produce the carpet to match the sample sent in by Carriage Park. He had set it up to give exactly the same number of stitches per square inch and the same pile height, had used the same type of jute backing as the sample had and had applied the same type of latex coating over the jute. The pile on the sample was one-quarter of an inch deep, made of re-worked, re-processed nylon. He identified swatches from each of the rolls of carpet about which appellee is here complaining, and testified that he had compared them to the sample they sent in with their order; he said the stitches per inch, the pile height, the construction and the material were all the same. The carpeting in question is very low in price. He was asked: "Assuming, Mr. Golden, that you have the identical carpeting. One may wear differently from the other, and one may pill more than the other. Is there any reason for this that you know of?" His answer was: "Unless it would be the quality of the padding or the quality of the installation; if they stretch it too tight or not tight enough, and, of course, the maintenance of the carpet." On cross-examination he agreed that one method of comparing carpet was by the way it wears.

By appellant's answers to interrogatories and admissions, both of which are in evidence, it has been shown that Lewis Carpet Mills, Inc., is a Georgia corporation that does business in Texas and that pursuant to the order for the carpet in question, 7,000 yards of it were shipped to Tomball, Harris County, Texas.

We overrule appellant's first point. We cannot say that as a matter of law the evidence is insufficient to support the trial court's order or that appellee wholly failed to prove a cause of action against appellant.

Appellee's petition contained an allegation that appellant had breached its express warranty that it would manufacture the carpet in question exactly as it had done in making the portion from which the sample was taken, that it would meet the quality of the other carpet and that it would be fit for the same use. Also, that appellant's representative who sold the carpet well knew the use to which it was to be put and that he impliedly warranted that it was fit for such use.

Appellee offered no direct proof that the carpet in question had been manufactured any differently from that in the previous order from which the sample had been taken. They have introduced evidence, however, that there is a substantial difference in the wearing qualities, or pilling of the two orders. The admissions which we have noticed by Mr. Todd, Lewis Carpet Mills' representative who came to the project and examined the carpet, are significant. There is nothing in the record to suggest that Mr. Todd found that the carpet involved in this case had been improperly installed or maintained, and from his expression of his belief that Lewis would try to work out a solution, it may be inferred that he did not so find.

The buyer furnished the sample to be duplicated, a sample which had also been made by the seller. Appellee has shown, at the least, that appellant expressly warranted that the new carpet would be like the sample; appellee has shown circumstantially that it was not and that the excessive pilling resulted from the failure of the manufacturer to duplicate its own sample. Appellant has introduced evidence that it set a machine to make the carpet just like the sample, but several types of materials were used in the process and we are unwilling to conclude that that evidence plus expert testimony to the effect that the swatches were identical precludes the trier of facts from deciding that despite their appearance, one finished product may be substantially less durable than another even if they have been produced by the same machine. And

it has not been established in this case that the same machine was used. Despite the careful use of rigid quality control methods and excellent machines, variances in the product do occur in modern manufacturing processes.

Appellant's second point of error is that the trial court erred in denying appellant's plea of privilege because appellee wholly failed to prove that a cause of action against appellant, or a part thereof, accrued in Harris County, Texas, as required by Art. 1995, V.A.T.S.

We also overrule this point. The goods were shipped to a point in Harris County, Texas, and the order (which was prepared on a form furnished by appellant) directed that shipment was to be to the appellee in Houston and was to be made by "our truck." We cannot tell from the record who specified this, but we take it to mean either appellant's truck or appellee's truck. There is no evidence that the shipment was handled by an independent carrier. In interrogatories filed by appellee, the appellant was asked whether, when the carpet in question was delivered to Harris County, appellant's representative making the delivery received payment for it from appellee. Lewis Carpet Mills' reply was that the truck driver who delivered the carpet in question received a check. Since delivery was to be by the truck of one party or the other, the trial court was entitled to conclude that delivery was probably made by appellant's truck; the buyer of a shipment of goods does not ordinarily pay for it by giving his check to the driver of his own truck on delivery.

Although the order form contains a typewritten provision that the terms of the sale were "Net COD," and the printed one states "F.O.B.Mill," we conclude these provisions are not inconsistent with the typewritten statement "our truck" and that the trial court was entitled to conclude that the contract required delivery in Harris County.

 It is well settled that a cause of action for breach of contract arises in part within the county where the contract was breached. It was breached here when the defective carpet was delivered to the appellee in Harris County. Further, the carpet began to deteriorate after being put in use in Harris County, so a part of the buyer's cause of action under the warranty arose there. Teague Brick Sales Co. v. Dewey, 355 S.W.2d 249 (Amarillo, Tex.Civ.App. 1962, no writ); Josey Miller Co., Inc. v. Wilson, 384 S.W.2d 231 (San Antonio, Tex.Civ.App.1964, no writ).

The judgment of the Trial Court is affirmed.